**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Shawn Bossardet, ) | No. CIV 10-620-TUC-FRZ (GEE) |
| ) | |
| Petitioner, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Charles L. Ryan; et al., ) | |
| ) | |
| Respondents. ) | |
| ) | |
| _____ ) | |

On October 15, 2010, Aaron Shawn Bossardet, an inmate confined in the Arizona State Prison Complex in Tucson, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2254. (Doc. 1)

Pursuant to the Rules of Practice of this court, this matter was referred to Magistrate Judge Edmonds for report and recommendation. LRCiv 72.1

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order denying the petition on the merits. Trial counsel was not ineffective. Newly discovered evidence does not constitute a cognizable claim. The trial court's failure to instruct the jury on the "mere presence" defense *sua sponte* was not error. The prosecutor's alleged improper vouching did not violate due process. Bossardet's natural life sentence does not violate the Eighth amendment.

<u>Summary of the Case</u>

Bossardet was convicted after a jury trial of first degree murder, aggravated assault with a deadly weapon, and three counts of kidnapping. (Doc. 1-4, p. 2) The trial court sentenced him to various terms of imprisonment totaling natural life plus 10.5 years. *Id.*, pp. 2-3.

At trial, the state presented evidence that "Bossardet kidnapped three individuals [West, Muro, and Gutierrez] while trying to discover who had stolen money owed to him for an illegal drug transaction." *Id.*, p. 3; (Doc. 1-2, pp. 2-3) "He beat, and eventually shot, one victim [Gutierrez] who died as a result of the gunshot wound." (Doc. 1-4, p. 3) After the shooting, one of the kidnap victims, West, convinced Bossardet to drive them all to the Western Union office on the pretext that he could use their phone to raise some money. (Doc. 1-2, p. 6) At some point, West managed to ask one of the clerks to call the police. *Id.* Bossardet fled and was later apprehended at a friend's house. *Id.*

Bossardet argued on appeal that "the trial court erred by denying his motion to strike the state's notice of aggravating circumstance, refusing to excuse a juror, admitting into evidence a recording of a jailhouse telephone, giving a *Portillo* jury instruction, and failing to give a 'mere presence' jury instruction." *Id.* He further argued "the natural life sentence is excessive and that prosecutorial misconduct deprived him of his right to a fair trial." *Id.* The court of appeals affirmed his convictions and sentences on October 18, 2006. *Id.*, pp. 2-18. Bossardet appealed to the Arizona Supreme Court, but that court summarily denied review on April 18, 2007. (Doc. 1-6)

Bossardet filed a timely petition for post-conviction relief arguing trial counsel was ineffective for (A) failing to visit him in jail and noticing that he had a flat affect, (B) failing to properly investigate, interview witnesses, review the evidence and prepare for trial, (C) failing to file pretrial motions, (D) failing to submit voir dire, (E) failing to make proper objections, (F) failing to submit jury instructions, (G) failing to advise him about testifying on his own behalf, (H) failing to call defense witnesses, (I) failing to present mitigation evidence, and (J) committing cumulative errors. (Doc. 1-9, p. 3) The trial court denied the petition on October 28, 2008. (Doc. 1-9, p. 2)

Bossardet timely appealed,[1] but though the court of appeals granted review, it denied relief on May 14, 2009. (Doc. 1-11, pp. 2-6) The court of appeals discussed the merits of some of Bossardet's claims, but for the most part, it affirmed the trial court's decision without elaboration. (Doc. 1-11)   Bossardet appealed to the Arizona Supreme Court, but that court summarily denied review on October 28, 2009. (Doc. 1-11, p. 7)

On October 15, 2010, Bossardet filed the instant Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2254. (Doc. 1) He claims (1)  trial counsel was ineffective for (I) failing to spend enough time with him before trial, (II) failing to move *in limine* that the state be precluded from referring to him by his nickname, "Joker," (III) failing to interview the pathologist and stipulating to the cause of death, (IV) failing to request that he undergo a medical exam or investigate whether or not he was medicated during trial, (V) failing to present exculpatory evidence, (VI) failing to request a continuance when confronted with new evidence as to a phone call he made to his brother, failing to properly object, and failing to strike portions of the call, (VII) failing to advise him about testifying in his own behalf, (VIII) failing to make proper objections and failing to object to the prosecutor's opening and closing, (IX) failing to call character witnesses, (X) failing to file jury instructions such as a mere presence instruction, and (XI) failing to request appointment of a mitigation specialist, file a sentencing memorandum, or conduct a mitigation hearing; (2) he has newly discovered evidence of post traumatic stress disorder; (3) the trial court failed to advise the jury of the mere presence defense *sua sponte*; (4) the prosecutor committed misconduct during voir dire, in the opening statement, and in the closing argument; and (5) his sentence of natural life was excessive. (Doc. 1)

---

[1] The record does not contain a copy of the petitioner's appellate brief.  The court is therefore unable to verify that Bossardet raised the same claims before the court of appeals that he raised before the trial court in his Rule 32 petition.  Nevertheless, the court will assume that he did so because the respondents concede that all of his claims were properly exhausted.

The respondents filed an answer on February 28, 2011. They concede the petition is timely, and Bossardet's claims are exhausted. They argue the petition should be denied on the merits. Bossardet filed a reply on May 27, 2011.

Discussion

The writ of habeas corpus affords relief to prisoners in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241. If the petitioner is in custody pursuant to the judgment of a state court, the writ will not be granted unless prior adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The petitioner must shoulder an additional burden if the state court considered the issues and made findings of fact.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254 (e)(1).

A decision is "contrary to" Supreme Court precedent if the "state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from Supreme Court precedent." *Vlasak v. Superior Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir. 2003). A decision is an "unreasonable application" if "the state court identified the correct legal principles, but applied those principles to the facts of [his] case in a way that was not only incorrect or clearly erroneous, but objectively unreasonable." *Id.* If the state court denied on the merits but did not explain its reasoning, this court must independently review the record to determine whether the state court clearly erred in its application of Supreme Court law. *Pirtle*

*v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003). If the highest state court fails to explain its decision, this court looks to the last reasoned state court decision. *See Brown v. Palmateer*, 379 F.3d 1089, 1092 (9th Cir. 2004).

Federal review is limited to those issues that have already been fully presented to the state court. This so-called "exhaustion rule" reads in pertinent part as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State. . . .

28 U.S.C. § 2254(b)(1)(A). This rule permits the states "the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971).

To be properly exhausted, the federal claim must be "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). In other words, the state courts must be apprised of the issue and given the first opportunity to rule on the merits. *Id.* at 275-76. The petitioner must present the state court with both the factual and legal basis of his claim. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999).

In addition, the petitioner must explicitly alert the state court that he is raising a federal constitutional claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), as modified 247 F.3d 904 (9th Cir. 2001); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). The petitioner must make the federal basis of the claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

If the petitioner is in custody pursuant to a judgment imposed by the State of Arizona, he must present his claims to the state appellate court for review. *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000). If state remedies have not been exhausted, the petition may not be granted and should ordinarily be dismissed. *See Johnson v.*

*Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). In the alternative, the court has the authority to deny on the merits rather than dismiss for failure to exhaust. 28 U.S.C. § 2254(b)(2).

A claim is "procedurally defaulted" if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not fairly presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.* A claim that is procedurally defaulted must be denied unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Discussion: Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." *Luna v. Cambra*, 306 F.3d 954, 961(9th Cir. 2002), reissued as amended, 311 F.3d 928 (9th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)). Habeas relief, however, is available only if "counsel's performance was deficient" and the "deficient performance prejudiced the defense." *Id.* To show prejudice, the petitioner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Bossardet challenges his conviction, he must show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.*

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "Because of the difficulties inherent in making the evaluation, a

court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal citation omitted).

In his first claim of attorney error, Bossardet argues trial counsel "spent under 6 hours with petitioner." (Doc. 1, p. 6.) The trial court addressed this issue below and found that trial counsel visited Bossardet nine times and that investigators "made numerous other visits." (Doc. 1-9, p. 4) Bossardet has presented no evidence to rebut the trial court's factual findings, so they may be presumed to be correct. *See* 28 U.S.C.A. § 2254 (e)(1). The trial court[2] concluded counsel's performance was not deficient and Bossardet was not prejudiced.

The trial court's decision on this issue was neither "contrary to" nor "an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Bossardet provides no evidence that the number of hours counsel spent with Bossardet was so inadequate as to clearly violate Supreme Court precedent. He therefore cannot establish counsel's performance was deficient. He suggests that counsel failed to adequately prepare him to testify, but he does not explain how his testimony would have been different if he had had more time with his attorney to prepare. He cannot establish prejudice.

Bossardet further claims counsel should have moved *in limine* to preclude the state from using his nickname, "Joker." (Doc. 1, p. 6) Apparently, Bossardet believes that the jury could have incorrectly inferred from this nickname that he was a gang member. (Doc. 20, p. 10) The trial court denied this claim finding it pure speculation that the jurors could have made this inference. (Doc. 1-9, p. 6)

The trial court's holding was correct. Bossardet provided no evidence to the trial court that anyone on the jury made this incorrect inference. His claim is purely speculative. He

---

[2] The court of appeals addressed on the merits only claims (1)(VII), (1)(IX) and (2). For the remainder of the claims, this court analyzes the decision of the trial court. *See Brown v. Palmateer*, 379 F.3d 1089, 1092 (9th Cir. 2004).

cannot establish prejudice. *See, e.g., Gonzalez v. Knowles*, 515 F.3d 1006, 1016 (9th Cir. 2008) ("Such speculation is plainly insufficient to establish prejudice.").

Bossardet further claims counsel was ineffective by failing to interview the pathologist before trial and stipulating to the cause of death. (Doc. 1, p. 6) At trial, the prosecution introduced evidence that Bossardet shot the victim, Gutierrez, in the leg intending to kill him. (Doc. 1-9, pp. 5-6) Bossardet's theory of the case was that the other two men present, West and Muro, shot the victim because he had stolen their drug money. (Doc. 1-4, p. 12) The prosecution did not call the pathologist to testify because Bossardet stipulated to the cause of death. (Doc. 20, p. 7)

In this claim, Bossardet argues that trial counsel failed to interview the pathologist because, if he had, he would have found out that the pathologist believes that "there may be a lot of people that feel like it's not possible to kill somebody with a – a shot to the leg." (Doc. 20, p. 8) Assuming that trial counsel would have found this out, Bossardet argues that counsel could have adopted a different trial strategy and argued there was no premeditation.

The trial court held that counsel's failure did not result in prejudice because the government had ample evidence of premeditation and therefore, even if the pathologist's opinion had been discovered, counsel still could have chosen to stick with his original theory that Bossardet was not the one who shot the victim. (Doc. 1-9, pp. 5-6) One of the two other men present, West, testified that Bossardet said to the victim, "You got my money; you got my money stole. Now you are going to f'ing die." (Doc. 1-9, p. 5) West testified that after the shooting, Bossardet said, "I just f'ing killed him. You're next. You're next." *Id.* West further testified that Bossardet's clothing was soaked with the victim's blood and that Bossardet had previously struck the victim in the head with his gun "a dozen times." *Id.*, pp. 5-6. In light of this evidence of premeditation, counsel's strategy to pin the blame on the other two men was understandable.

The trial court's analysis of the prejudice prong was not unreasonable. Bossardet cannot show the decision below was "contrary to or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

Bossardet further claims counsel should have requested that he undergo a mental exam or investigate whether he was on medication during the trial. (Doc. 1, p. 6) Bossardet maintains he was taking Doxepin, an anti-anxiety drug, at the time of the trial, and this drug caused him to have a flat affect on the stand, which adversely affected his credibility. (Doc. 20, pp. 6-7) He argues counsel should have noticed this flat affect although he does not specifically explain what he believes counsel should have done about it. *Id*.

The trial court found that, while there was evidence that Bossardet had a prescription for Doxepin, there was no evidence that the prescription was filled, that Bossardet took it during trial, or that it produced in him a flat affect. (Doc. 1-9, p. 3) The court further questioned Bossardet's claim that he was sedated and impaired during the trial because Bossardet was able to call his brother from jail and urge him to keep a witness from testifying. *Id*. pp. 3-4. The trial court concluded that counsel did not notice Bossardet's flat affect because he did not have one. *Id*., p. 4. And if he did, there is no reason to expect that an attorney should have the ability to recognize a flat affect when the client has one. *Id*.

Bossardet has presented no evidence to rebut the trial court's factual findings, so they may be presumed to be correct. *See* 28 U.S.C.A. § 2254 (e)(1). The trial court's decision was not "contrary to" or "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Bossardet further claims trial counsel missed an opportunity to impeach the government's witness, Leo Muro, by calling Steve Helsinger to testify about a prior statement Muro made to police. According to Bossardet, Muro told the police that Bossardet drove him (Muro), the victim, and West to a drive-in liquor store and was talking "shit" to the person there and had a gun in his hand at the time. (Doc. 20, pp. 13-14) Although Muro testified at the trial, he was not asked about this statement.

Bossardet argues trial counsel could have asked Muro about this prior statement. And, assuming Muro repeated his earlier statement, trial counsel could have impeached Muro with Helsinger's contrary testimony. According to Bossardet, Helsinger would have testified that

Bossardet did not "talk shit" to the person at the drive-through liquor store and that he (Helsinger) did not see a gun in the defendant's possession. *Id.*

The trial court denied the claim as speculative because it is not clear what Muro would have said had he been asked about this prior statement. (Doc. 1-9, p. 6) This court agrees. Bossardet's claim is entirely speculative.

Bossardet further claims trial counsel "failed to request a continuance during trial when confronted with new evidence during trial (phone call between petitioner & his brother), made incorrect objection to this evidence, and failed to strike certain portions of this phone call." (Doc. 1, p. 6)

In the middle of the trial, the prosecution disclosed a recorded telephone call Bossardet made to his brother from jail. In that call, Bossardet "conversed with his brother about dissuading a State's witness from coming to court, paying for a hotel room for that witness, some reference to violence, and assurances that his cellmate would not be witness at this trial." (Doc. 20, p. 11) Over the objection of counsel, the call was used by the prosecution in its cross-examination of Bossardet. *Id.*, p. 11, n. 4.

To begin with, Bossardet argues counsel should have asked for a continuance when the evidence was disclosed. He does not, however, explain why one was necessary. (Doc. 1, p. 6) He seems to imply that he needed a continuance to have a chance to discuss the new evidence with counsel, but in his affidavit, he states that he and counsel *did* meet and discuss the evidence. (Doc. 21-1, p. 2) He complains that counsel was angry at him and did not properly discuss the "implications" of the call, but that is another issue. *Id.* The record shows Bossardet had an opportunity to discuss the call with his attorney. The court finds that trial counsel's performance was not deficient, and even if it was, Bossardet cannot show prejudice.

Bossardet further argues counsel should have objected to the introduction of the evidence on the basis of prejudice and foundation. (Doc. 20, p. 11) The court concludes that even if counsel's performance was deficient, Bossardet cannot show prejudice.

First, the evidence was not prejudicial as that term is used by the Arizona Rules of Evidence. On direct appeal, the court of appeals explained that the phone call was adverse to

Bossardet's case but did not evince "an undue tendency to suggest decision on an improper basis . . . such as emotion sympathy, or horror." (Doc. 1-4 p. 9) Accordingly, the phone conversation was not prejudicial as the term is used in Rule 403, and a proper objection (assuming one was not raised at the time) would not have been successful. *See Id.*

Second, as the trial court explicitly found, the evidence did not need a foundation. (Doc. 1-9, p. 8) Accordingly, counsel's failure to object on the basis of foundation, assuming it was deficient performance, did not result in prejudice.

Finally, Bossardet complains counsel should have stricken portions of the call. He does not, however, explain what portions should have been stricken or discuss what grounds would have supported such a motion. (Doc. 1, p. 6) Apparently, counsel later stated that he made no motion to redact the call "for the sake of clarity." (Doc. 20, p. 12) On its face, this may be taken as a legitimate trial strategy. Bossardet offers nothing to the contrary. Bossardet can show neither deficient performance nor prejudice.

Bossardet also claims his attorney failed to advise him about his right to testify on his own behalf. He complains he was not told that the decision whether to testify or not was entirely his own. (Doc. 20, p. 7)

At trial, Bossardet testified that he was not the shooter. The trial court found no prejudice because even if counsel had done a better job explaining his rights, Bossardet still would have testified to support his theory of the case. (Doc. 1-9, p. 9) The court noted that "it is very difficult to see how the defendant could have pursued the defense he did without testifying." (Doc. 1-9, p. 9) The court of appeals further noted that Bossardet never clearly stated that he would have refused to testify if he had been better informed of his rights. (Doc. 1-11, p. 4) Accordingly, Bossardet cannot establish prejudice.

Bossardet also claims "counsel failed to make proper objections & failed to object to arguments made by the prosecutor during her opening & closing statements." (Doc. 1, p. 6) Bossardet, however, does not explain what "proper objections" counsel should have made. *Id.* In his reply brief, he explains further that he believes counsel should have objected when the prosecutor said in opening that "at the end of the trial, I will ask you to find him (the defendant)

guilty because as sure as each and every one of you came down here today, he is." (Doc. 20, p. 14) In closing, the prosecutor disparaged the defense theory that West and Muro could "concoct a story and get it past the County Attorney's office and get all the way to a first degree murder trial and that nobody is the wiser for their lies from these smart, savvy criminals." (Doc. 20, pp. 14-15) Bossardet argues that trial counsel's failure to object caused him prejudice because, if he had objected, this issue would have been reviewed for harmless error rather than for fundamental error. (Doc. 20, pp. 16-17)

The trial court found that counsel's failure to object did not result in prejudice because the statements were not impermissible vouching. (Doc. 1-9, p. 8) And even if they were, they did not affect the verdict because the jury was instructed that the lawyer's statements were not evidence. (Doc. 1-9, p. 8)

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *U.S. v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005). If the defendant objects at trial, the error is subject to harmless error on direct appeal. *U.S. v. Hinton*, 31 F.3d 817, 824 (9th Cir. 1994). Under the harmless error standard, "[r]eversal is warranted only if it is more probable than not that the prosecutorial misconduct materially affected the verdict." *Id*.

Even if the prosecutor's statements were vouching, Bossardet cannot establish prejudice from counsel's failure to object because even under the harmless error standard, reversal was not warranted. The vouching, assuming it was so, was not egregious. The jury was admonished that the opening statements and closing arguments are not evidence. *See Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472 (1986) (Prosecutor's improper argument did not deprive the defendant of a fair trial in part because "[t]he trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence."). Juries are presumed to follow their instructions. *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 733 (2000). The trial court's decision

on this issue was not "contrary to" or "an unreasonable application of, clearly established Federal law."

Bossardet further claims counsel was ineffective for failing to call character witnesses. Bossardet argues he gave trial counsel a list of witnesses who would have testified to his good character. (Doc. 20, p. 18)

The trial court denied the claim because in his petition for post-conviction relief, Bossardet "did not identify any specific witness, let alone establish that the witness would have testified or what that testimony might have been." (Doc. 1-11, p. 5) Accordingly, the trial court concluded that Bossardet did not establish deficient performance nor prejudice. This court must evaluate the state court's decision in light of the evidence presented to that court. *Cullen v. Pinholster*, __ U.S. __, __, 131 S.Ct. 1388, 1398 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). On the facts before it, the trial court made the correct decision. *See* (Doc. 1-7, pp. 25-26)

Bossardet further claims "[t]rial counsel failed to file any jury instructions, specifically a mere presence instruction, which was the theory of his case." (Doc. 1, p. 6) He argues counsel should have offered the instruction approved in *State v. Noriega*, 187 Ariz. 282, 287, 928 P.2d 706, 711 (App. 1996). (Doc. 20, p. 20)

The trial court denied the claim on prejudice grounds reasoning that counsel's alleged failure to submit a specific jury instruction was not error absent some evidence that the jury was confused or the instructions given by the court were improper. (Doc. 1-9, p. 9) Moreover, the trial court noted that "counsel conducted a thorough analysis of the proposed instructions and provided substantial input." *Id*.

This court agrees. The trial court instructed the jury that "it could find him guilty only if he had actually committed the charged acts with the required mental state." (Doc. 1-4, p. 12) Contrary to Bossardet's argument, there is nothing wrong with this instruction. The addition of a mere presence instruction is not necessary. (Doc. 1-4, p. 12) In fact, this is not a "mere presence" case at all.

In a "mere presence" case there is evidence that the defendant was in the presence of others who committed a particular crime, but no specific evidence that the defendant himself committed the crime. In such a case, there is a danger that the defendant will be convicted as an accomplice, not because he "aided or attempted to aid with the intent to promote or facilitate" the others, but because he was merely present when the others committed the crime. *State v. Noriega*, 187 Ariz. 282, 287, 928 P.2d 706, 711 (App. 1996).

In this case, there was no danger that Bossardet would be erroneously convicted as an accomplice. The jury was presented with two alternate theories: Either Bossardet shot the victim, or the other two men shot the victim. *See* (Doc. 1-4, p. 12) There was no evidence that Bossardet and the two men, West and Muro, were working together. Indeed, West and Muro testified that they were being kidnapped by Bossardet. (Doc. 1-4, p. 12)

As the court of appeals observed, this was not a "mere presence" case. (Doc. 1-4, p. 12) Accordingly, trial counsel's failure to request a "mere presence" instruction did not cause Bossardet prejudice.

Finally, Bossardet claims counsel failed to request appointment of a mitigation specialist, failed to file a sentencing memorandum, and failed to conduct a mitigation hearing. (Doc. 1, p. 6) He suggests counsel should have offered mitigating factors such as his lack of a felony record, his impairment during the offense, or his potential for rehabilitation. (Doc. 20, p. 22)

The trial court denied this claim on prejudice grounds because "counsel's performance at sentencing was not lacking in any way." (Doc. 1-9, p. 9) The trial court found, contrary to Bossardet's argument, that counsel did discuss mitigating factors such as "petitioner's age, his lack of prior convictions, and his chaotic and impoverished childhood, and his significant impairment at the time of the crime." (Doc. 1-9, p. 9) Bossardet presented no evidence to rebut the trial court's finding, so it may be presumed to be correct. *See* 28 U.S.C.A. § 2254 (e)(1).

Bossardet cannot show counsel's performance at sentencing caused him prejudice. The trial court's decision was not "contrary to" or "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Discussion: Newly Discovered Evidence

In his second ground for relief, Bossardet claims he has newly discovered evidence. On April 30th and May 1st of 2007, approximately two years after the trial, Bossardet was examined by Dr. Paul Beljan at the Arizona State Prison. (Doc. 20, p. 24)  Beljan diagnosed Bossardet with post-traumatic stress disorder.  *Id*.  Bossardet argues this new evidence is relevant on the issue of premeditation.  *Id*.

Unfortunately, a claim that newly discovered evidence has been found that bears on the defendant's guilt or innocence is not cognizable in federal habeas corpus.  *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860 (1993).  Accordingly, this claim must be dismissed.

Discussion: Jury Instructions

In his third ground for relief, Bossardet claims his right to a fair trial was violated by the trial court's failure to give a "mere presence" instruction *sua sponte*.

As explained above, this was not a "mere presence" case.  *See* (Doc. 1-4, p. 12)  Accordingly, the trial court's failure to give a "mere presence" instruction *sua sponte* was not error.  The decision of the court of appeals on this issue was not "contrary to" or "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d);  *see* (Doc. 1-4, p. 12)

Discussion: Prosecutorial Misconduct

In his fourth ground for relief, Bossardet claims prosecutorial misconduct violated his "due process right to a fair trial." (Doc. 1, p. 9)  Specifically, he complains that the prosecutor made improper comments at *voir dire*, during opening statements and during the closing arguments.

Bossardet complains that the prosecutor asked during jury selection if a prospective jury member "would disbelieve her witness if they admitted to using drugs."  *Id*.  During opening statements the prosecutor stated "at the end of trial, I will ask you to find him (petitioner) guilty because as sure as each and every one of you came down here today he is."  *Id*.  In rebuttal

closing, the prosecutor argued that "[c]ounsel wants to paint this picture of Mr. West & Mr. Muro committing this savage crime, who concoct a story and get it past the County Attorney's office and get it all the way to a first degree murder trial & that nobody is the wiser for their lies from these smart, savvy criminals." *Id*. Also, the prosecutor argued that Muro and West did the right thing by testifying and the jurors should "do the same thing." *Id*.

Bossardet does not clearly explain why the prosecutor's comments at jury selection were objectionable. The prosecutor's other statements could be characterized as "vouching."

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *U.S. v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005). If the prosecutor engaged in improper argument, a habeas corpus petitioner is entitled to relief only if "the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2472, 2471 (1986) (punctuation modified). "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Id*.

Here, the prosecutor's comments, assuming they were improper, were not so egregious as to have resulted in a denial of due process. The comments "did not manipulate or misstate the evidence, nor did [they] implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Id*. at 182, 2472. Moreover, the jury was instructed by the trial court that opening statements and closing arguments are not evidence. (Doc. 12-1, p. 6); *see Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472 (1986). And, juries are presumed to follow their instructions. *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 733 (2000). Assuming the prosecutor's comments were improper, it is unlikely that they had an adverse effect on the jury's deliberation. The decision of the court of appeals denying this claim was not "contrary to" or "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d); *see* (Doc. 1-4, pp. 14-17)

Discussion: Eighth Amendment

Finally, Bossardet claims his sentence of natural life violates his rights under the Eighth Amendment.

The Eighth Amendment of the U.S. Constitution guarantees that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The phrase "cruel and unusual punishments" includes sentences of incarceration that are grossly disproportionate to the underlying offense. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). A sentence of incarceration will be found grossly disproportionate only in the "exceedingly rare" and "extreme" case. *Id.* at 72-73.

As a first step in analyzing an Eighth Amendment claim, the court should conduct "a threshold comparison of the crime committed and the sentence imposed." *Gonzalez v. Duncan*, 551 F.3d 875, 883 (9th Cir. 2008). The court must "weigh the criminal offense and the resulting penalty in light of the harm caused or threatened to the victim or to society and the culpability of the offender." *Id.* (internal punctuation removed). If this inquiry "leads to an inference of gross disproportionality," the court will widen the scope of its analysis and conduct an intrajurisdictional and interjurisdictional comparative analysis of the sentence. *Id.* at 887.

In this case, the court's threshold analysis does not reveal an inference of gross disproportionality. Bossardet's sentence of natural life is extreme, but its severity arises from the fact that Bossardet committed first degree murder, the most serious of all offenses. The Supreme Court has allowed the same sentence under far less egregious circumstances. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 961, 994-95 (1991) (A sentence of life in prison without the possibility of parole for possession of 672 grams of cocaine imposed on a defendant without a prior felony conviction did not violate the Eighth Amendment.).

The court concludes Bossardet's sentence is not grossly disproportionate to his offense and therefore does not violate his Eighth Amendment right against cruel and unusual punishment. Accordingly, the decision of the state court was not "contrary to" or "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254; *see, e.g., U.S. v. Harris*, 154 F.3d 1082, 1083 (9th Cir. 1998) (A 95-year sentence for five counts of bank robbery and five counts of use of a firearm when committing a crime of violence does not

violate the Eighth Amendment.); *Edwards v. Butler*, 882 F.2d 160, 167 (5th Cir. 1989) (A sentence of life without parole for aggravated rape does not violate the Eighth Amendment.).

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order DENYING the Petition for Writ of Habeas Corpus. (Doc. 1)

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation. If objections are not timely filed, they may be deemed waived.

The Clerk is directed to send a copy of this report and recommendation to the petitioner and the respondents.

DATED this 3rd day of October, 2011.

Glenda E. Edmonds
United States Magistrate Judge